REMY CHIASSON, Judge Pro Tem.
This appeal involves a dispute between adjacent landowners over drainage of their respective properties. The trial court rendered judgment in favor of plaintiff, granting a permanent injunction. Defendant perfected this suspensive appeal. Finding the trial court committed an error of law, we reverse the judgment.
FACTS
On October 24, 1994, Joseph Ray Aydell, a Livingston Parish landowner, filed a petition for injunctive relief and for damages, naming as defendant C.J. Morales. The litigation was prompted when Mr. Morales filled in a man-made culvert which assisted the drainage of Mr. Aydell’s property. The district judge signed a temporary restraining order prohibiting the defendant from the following: “[o]bstructing, impeding or restricting the flow of the natural drainage”; “altering or modifying the natural drainage flow”; and, “[e]ontinuing to obstruct or impede the natural drainage” found on the properties of the parties. The matter came on for hearing on the merits on October 16, 1995.
It is difficult to discern from the record the exact configuration of the properties. There are no maps, charts, or drawings to assist us. The record consists solely of the verbal testimony of four lay witnesses and a few snapshots, some focusing on standing water on the Aydell property and others on a “road” constructed by plaintiff. There were no expert witnesses. The following description of the properties has been garnered from the testimony.
The property involved in this litigation fronts on Highway 16 in French Settlement, Louisiana. Mr. Morales owns approximately one acre of land which is surrounded on three sides by property owned by Mr. Ay-dell. The major portion of the Aydell property is to the west and north of the Morales property, and contains, among other things, a catfish pond and a garden. The present litigation was prompted by the fact that about one and a half acres of Aydell property is inundated with rainwater that will not drain.
On the east side of the Morales property is a 37-foot strip of land owned by Mr. Aydell, which strip separates the Morales property from its easterly neighbor, the-property of Norris Berthelot. Mr. Berthelot’s father and Mr. Aydell agreed to build a road along this border, 15 feet in width on the Berthelot side and 15 feet in width on the Aydell side. A ditch on the Berthelot side of the road is still maintained by Mr. Berthelot and carries water from the back of the Berthelot property to a ditch that runs parallel to the highway. When the_JjBerthelot-Aydell roadway was built in 1983, there was another ditch on the Aydell side of the road,-draining in the same direction, which is north to south. After Mr. Morales purchased his property in 1992, both he and Mr. Aydell would cut the grass in the ditch on the Aydell side of the road. Sometime prior to filing suit, Mr. Aydell decided to widen his portion of the road by adding approximately another 15 feet of roadway on his side. When he cleared the land for this addition, he put the dirt in the ditch, filling it up. Since that time, the water from the Morales properfy cannot drain via the ditch to the highway.
Mr. Aydell testified that his property is located at 17300 Hwy. 16 in French Settlement, and he has been living there for approximately 35 years. The defendant’s property was owned originally by the plaintiff’s mother. After her death, it was sold to Mr. Morales by her heirs, apparently despite objection by Mr. Aydell.
The plaintiff testified' a culvert had been placed on what, is now Morales property about 20 years ago by his niece, who had a mobile home located in the rear of the property. Mr. Aydell admitted the culvert was not always sufficient to handle all of the rainwater and that “it used to flood over the culvert” and eventually drain to the highway ditch. After a six-inch rain, the water would *160 remain on the Morales property, taking about a 24-hour period of time to drain. Mr. Aydell also admitted that about eight years ago he built a catfish pond on his property, which, when it overflows, drains into a ditch that goes directly to'the culvert on what was at that time his mother’s property. Mr. Ay-dell has a ditch from his garden to the Morales property.
Mr. Aydell stated he was seeking a court order to have Mr. Morales remove the obstacle he placed in the culvert and return the water flow to the way it had been since Mr. Aydell had been living there.
The plaintiffs only other witness was Elbert E. Forrest, another French Settlement resident who lives about a half mile from the Aydell property. He testified that there has always been a lot of water in the woods behind the Aydell and the Morales property. He stated that when the culvert was open, the water would collect in a low spot on the Morales property before draining off into the ditch near the highway in front of the properties. When asked if opening up the culvert would correct the current flooding problem on the Aydell property, he stated opening the culvert and removing the dirt that had been placed over it would work, or a ditch could be dug. The best description of the drainage of the Morales ^property that Mr. -Forrest could give was that the land was fairly high in the back and then toward the highway it had a seven to eight foot drop, making the water drain to the front. This configuration is Consistent with the north to south flow of the ditches testified to by Mr. Berthelot.
In addition to his own testimony and the testimony of Mr. Forrest, the plaintiff introduced some snapshots of the current flooding. There was no other documentary evidence or expert testimony.
The defendant testified on his own behalf and also presented the testimony of his neighbor, Mr. Berthelot, who stated he had been living in the area since 1984. Mr. Ber-thelot confirmed that when Mr. Aydell added to the road on his side, he completely eliminated the ditch on his side. The defendant introduced a photograph depicting a “grown up area” on the narrow strip of land owned by Mr. Aydell; Mr. Berthelot said that area previously had been the ditch that conducted water from the Aydell property to the highway. Mr. Berthelot concluded that despite all of the talk about the culvert and the dirt around the culvert, the water from Mr. Ay-dell’s property could still be conducted to the east ditch and down the road to the highway the way it used to be before Mr. Aydell added to his side of the road.
Mr. Morales testified he purchased his property in 1992. Concerning the catfish pond, Mr. Morales stated that if there was a natural drainage on the Aydell property, the catfish pond is sitting right in the middle of it. The catfish pond has an overflow line that comes off of it that flows into a ditch dug by Mr. Aydell straight from there to the middle of the Morales property. The defendant also stated the plaintiff dug a ditch from his garden to the same ditch which drains into the Morales property.
Mr. Morales also testified that the land was so low around the back of his house that the area could not be mowed at times, even when Mr. Aydell was keeping up the property prior to its sale. He estimated that between a third to a half of his one acre of land would be flooded at times.,
Mr. Morales admitted that when he bought the property, the land around his house flooded badly. In an attempt to correct the problem and make his land useable, he not only stopped up the culvert, but he leveled the land'. However, he testified that he and Mr. Aydell used to take turns mowing the grass in the ditch that Mr. Aydell eventually stopped up when he added to the road. Mr. Morales stated that in taking the above measures to correct the |5problem on his own land, he was diverting the water to the ditch on the east side of the property, and it still would be diverted if Mr. Aydell had not stopped up the ditch.
ERROR OF LAW
Our review of the record convinces us the trial court committed an error of law by finding LSA-C.C. arts. 655 and 656 applicable in the present factual situation. Article 655 provides: “An estate situated below is bound to receive the surface waters that flow *161 naturally from an estate situated above unless an act of man has created the flow.” Article 656 provides: “The owner of the ser-vient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome.”
The Louisiana Supreme Court has construed Article 655 (formerly Article 660) as having reference only to natural drainage, which the court defined as “drainage which had originally been provided by nature by reason of the respective location or situation of the properties.” Elam v. Cortinas, 219 La. 406, 53 So.2d 146, 148 (1951). Elam sued Cortinas for mandatory and prohibitory injunctions to prevent interference with drainage from plaintiff’s land. The trial court issued an injunction ordering defendant to remove all of the filling he had placed in the bed of an old bayou. The supreme court held that where the adjoining landowners had filled in the dry bed of an old bayou so as to reverse the flow of water therein, the natural drainage no longer existed within the meaning of the Civil Code provision imposing a servitude of natural drainage. The reviewing court held the district court was in error in ordering defendant to remove the filling.
Similarly, in the instant case, we cannot say that the defendant owes the plaintiff a servitude of natural drainage through the culvert, for the culvert is not a feature of the natural situation of the properties; it is a manmade device. According to Elam, Article 655 is not applicable and the trial court erred as a matter of law in ordering the defendant Mr. Morales to refrain from obstructing the natural flow. The fact that the waters involved in the instant case are natural rainwaters as contrasted with manmade refuse waters' such as sewage and industrial wastes is immaterial considering the other acts of man that admittedly contributed to the drainage situation encountered here [see Mathis v. City of DeRidder, 599 So.2d 378, 382 (La.App. 3d Cir.1992)]. Article 655 speaks of a natural flow, not merely natural waters.
Having found legal error, we now examine the record de novo to decide the proper disposition of this dispute. As previously mentioned, the record is so lacking in proof of the actual location and situation of the properties that we could barely make out an understanding of the basic facts presented. The testimony in this record is so inexact that we are merely speculating that the natural flow is north to south. If,- indeed, the natural flow is west to east, then.there is a serious question as to whether Mr. Aydell made the servitude more burdensome by filling in the ditch to the east of the Morales property. Considering the complete lack of proof as to the levels of the properties and the directions of the flow, we only can conclude that plaintiff failed to carry his burden of proving that his estate was the dominant one and defendant’s was the servient one.
Accordingly, we reverse the judgment of the trial court and dismiss plaintiff’s suit. We east the plaintiff for all costs of this appeal.
REVERSED.